THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN EDWARD HAMMOND, Jr.** | : | |
|     Plaintiff, | : | |
| | : | |
|     V. | : | CIVIL ACTION NO. 21-CV-3688 |
| | : | |
| **THOMAS ACERNO**, *et al.*, | : | |
|     Defendants. | : | |

## MEMORANDUM

**KENNEY, J.**                                                                 NOVEMBER 4, 2021

      John Edward Hammond, Jr., a pretrial detainee currently in custody at the Federal Detention Center in Philadelphia, has filed this civil rights action naming as Defendants several Special Agents of the Department of Homeland Security, a Special Agent of the Bureau of Alcohol Tobacco and Firearms, and numerous John Does allegedly employed as law enforcement officials by the United States Postal Service, "ICE",[1] (collectively "the federal actor Defendants"), the Pennsylvania State Police (collectively "the unknown Pennsylvania Troopers"), and Towamencin Township (collectively "the unknown Towamencin police"). All Defendants are named in their individual as well as their official capacities. Hammond has paid the filing fee for this case. For the reasons that follow, the Complaint is dismissed in part with prejudice and dismissed in part without prejudice, and Hammond will be given the option of (1) proceeding only on the claims that survive statutory screening or (2) filing an amended complaint to attempt to cure the defects the Court identifies in the claims dismissed without prejudice.

---

[1] The Court understands Hammond's references to "ICE" to mean the Bureau of Immigration and Customs Enforcement of the Department of Homeland Security. *See* ice.gov (last accessed Nov. 2, 2021).

1

I.     **FACTUAL ALLEGATIONS**[2]

Hammond alleges that at 10:30 a.m. on August 15, 2019, he was asleep with his wife Paige Hammond in the basement of the home owned by Paige's father, Gerald Evans. (ECF No. 2 at 10.)[3] They were both awakened by a big bang and yelling. (*Id.*) The door to the basement was kicked in and he saw red dots, then a number of masked men with firearms made their way to the bed. (*Id.*) Hammond later learned the masked men were unknown Pennsylvania Troopers and "HSI Agents." (*Id.*) Both spouses were unclothed while in bed and one of the agents grabbed Paige by the arm and pulled her from the bed. (*Id.*) Another agent grabbed Hammond by the chain he wore around his neck and pulled him while pointing a firearm at him. (*Id.*) Hammond was kicked in the back and behind as the agent yelled at him "Where the f***ing guns?" (*Id.*) Both were handcuffed, dragged upstairs, permitted to dress, and made to sit in the kitchen together for several minutes until Paige was taken to a different room.

Defendants Thomas Acerno and Christopher Chase entered the kitchen and asked Hammond if he knew what was in a package that had been placed on the table. (*Id.*) After he denied knowledge of the package contents, the two told him the package had just been delivered to the house (apparently in a controlled delivery) and contained "Glock trigger switches." (*Id.*) Hammond told them he thought they were for Airsoft toy guns. (*Id.*) He was asked about firearms that he alleges belonged to Paige. (*Id.*) When Acerno and Chase began to repeat the

---

[2] The facts are taken from Hammond's Complaint, which is comprised of the Court's preprinted form for use by prisoners filing civil rights claims supplemented by additional handwritten pages, as well as publicly available records. The Complaint contains considerable amounts of duplicative allegations, as well as legal arguments. The recitation of facts eliminates these duplications and arguments.

[3] The Court adopts the pagination supplied by the CM/ECF docketing system.

same questions, Hammond told them to stop badgering him about his wife's firearms. (*Id.*) He also told the Defendants he needed to take his pain and anxiety medications. (*Id.*) Paige allegedly heard Hammond become upset and ran into the kitchen to explain how important it was for Hammond to take his medication but the "agents didn't really seem to care about any of my medical or mental health medication needs very much and told her to go back into the other room and sit down." (*Id.* at 11.)

Hammond alleges next that he was told to sign an unspecified form after which the two Defendants left the room. (*Id.*) After approximately two and one-half hours, Acerno and Chase returned to the kitchen and shackled Hammond. (*Id.*) Neither would tell him why he was being arrested and, when he again told them he needed to take his medications, they again did not permit this. (*Id.*) Hammond asserts he blacked out at this point due to high blood pressure and does not have a full memory of events thereafter. (*Id.*) He later was told he had been taken to a hospital but does not remember being there. (*Id.*) He also later learned that the agents entered the Evans house without knocking and announcing their presence, even though the warrant they were executing did not give them that authority and, he asserts, there were no exigent circumstances and no one in the home posed a threat to them. (*Id.* at 11-12.) According to Hammond, the agents covered his own security cameras with evidence tape. (*Id.* at 12.)

Hammond asserts the length of time he was detained before he was arrested was unreasonable, and Acerno's and Chase's actions were coercive or calculated to cause him surprise, fright, or confusion. (*Id.*) He alleges the agents did not have an arrest warrant, just a search warrant for the Evans house, but he was separated from the other occupants, and there was no probable cause for his arrest, which he asserts, happened "the moment they made entry into the residence [since] I was never free to go about my buisness [sic]." (*Id.* at 13.) According to Hammond, the agents badgered him about firearms owned by Paige and "[w]hen I didn't give

them the answers they wanted to hear, they made up a statement to fit what they had planned. Something to help them cover up their own mistakes." (*Id.* at 14.)  He asserts he did not know what he was signing when the agents presented him with the form because he was undressed, half asleep still under the influence of sleep medication he had taken, and "wiping the cold out of my eyes." (*Id.*)

Hammond contends that Defendant Acerno made false statements in the search warrant application, including that the Evans house was listed as Hammond's address on his previously issued driver's license but he contends his license had been suspended since 1998, and he had never used that address in any event for his license since he did not even know Paige or her father Gerald Evans at that time.  (*Id.* at 15.)  Acerno also falsely asserted in the application that police records indicated that Gerald Evans was recorded as purchasing eleven firearms, including a Glock 9mm pistol, when those records referred to a different Gerald Evans at a different address, and Paige's father never registered a firearm.  (*Id.*)  Acerno falsely asserted that Glock trigger switches are "classified as a combination of parts designed and intended solely and exclusively, for use in converting a weapon into a 'machinegun.'  He states in the same affidavit Glock does not manufacture parts for the aftermarket conversion of Glock pistals [sic].  If Glock does not make them and they're all conterfiet [sic], then there is no way for them to be legally classified."  (*Id.* at 15-16.)  Rather, Hammond contends, the parts delivered to the Evans house were intended to convert an Airsoft toy gun.  (*Id.* at 16.)

A review of publicly available records[4] from this Court's own docket reveals that a federal criminal complaint and arrest warrant were lodged against Hammond on August 16,

---

[4] The Court may consider matters of public record when conducting a screening under § 1915.  *Castro-Mota v. Smithson*, Civ. A. No. 20-940, 2020 WL 3104775, at *1 (E.D. Pa. June 11, 2020) (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)); *Harris v. U.S. Marshal Serv.*, Civ. A. No. 10-328, 2011 WL 3607833, at *2 (W.D. Pa. Apr. 6, 2011),

4

2019.  *See United States v. Hammond*, 19-CR-517 (E.D. Pa.)  At a preliminary hearing conducted on August 20, 2019, Hammond stipulated to probable cause for the arrest, and the Government's motion for pretrial detention was granted.  (*Id.*, ECF Nos. 6, 7.)  On September 10, 2019, Hammond was indicted on one count of being a felon in possession of a weapon, in violation of 18 U.S.C. § 922(g)(1).  (*Id.*, ECF No. 8.)  Hammond entered a plea of not guilty to the charge on September 25, 2019.  (*Id.*, ECF No. 11.)  He is represented by counsel and the charge remains pending.

Hammond seeks to assert *Bivens* claims for "initiating falsehood," official oppression, illegal search and seizure, and due process violations against Defendants Acerno and Chase as well as Supervisor Special Agent David Hepler, ATF Special Agent Dominc Raguz, an unknown "Postal Worker 'UCA'", and three unknown ICE Agents.  (*Id.* at 17.)  He also seeks to assert claims under § 1983 against the unknown Pennsylvania Troopers, and the unknown Towamencin police for "knock and announce," excessive force, and assault.  (*Id.* at 18.)  All claims are asserted against all Defendants in their individual as well as official capacities.  Hammond seeks money damages.

## II.     STANDARD OF REVIEW

Hammond has paid the filing fee for this case.  Nonetheless, because he is a prisoner attempting to sue governmental officials, under 28 U.S.C. § 1915A the Court has the authority to screen his Complaint.  *See Shane v. Fauver*, 213 F.3d 113, 116 n.2 (3d Cir. 2000) (recognizing that the district courts have the authority to screen a prisoner complaint pursuant to §

---

report and recommendation adopted as modified, 2011 WL 3625136 (W.D. Pa. Aug. 15, 2011) ("In addition to the complaint, courts may consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case in disposing of a motion to dismiss under Rule 12(b)(6), and hence, under the screening provisions of the PLRA.") (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994).

1915A(b)(1) even if the prisoner is not proceeding *in forma pauperis*). Section 1915A requires that the Court "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In doing so, the Court must dismiss a complaint or any portion thereof that "is frivolous, malicious, or fails to state a claim upon which relief may be granted," *id.* § 1915A(b)(1), or that "seeks monetary relief from a defendant who is immune from such relief," *id.* § 1915A(b)(2).

Whether a complaint fails to state a claim under § 1915A(b)(1) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Neal v. Pa. Bd. of Prob. & Parole*, No. 96-7923, 1997 WL 338838, at *1 (E.D. Pa. June 19, 1997); *see also Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Accordingly, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As Hammond is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III. DISCUSSION

### A. "Knock and Announce" Individual Capacity Claims

The Court understands Hammond to be asserting constitutional claims against the unknown Pennsylvania Troopers, unknown Towamencin police, and "HSI Agents"[5] based on their violation of the "knock and announce" rule. (ECF No. 2 at 10.) The vehicle by which federal constitutional claims may be brought in federal court against state officials is Section 1983 of Title 42 of the United States Code, that provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The federal actor analogue to § 1983 liability is *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 392 (1971) (holding that a remedy is available for a federal agent's violation of a citizen's Fourth Amendment right to be free from warrantless searches and seizures); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001) (stating that the "purpose of *Bivens* is to deter individual federal officers from committing constitutional violations" by subjecting them to personal liability).[6]

---

[5] The Court understands "HSI Agents" to refer to Defendants Thomas Acerno, Christopher Chase, and David Hepler, who are each identified as "HSI" in the caption of the Complaint and appear to be agents of the Department of Homeland Security.

[6] For purposes of statutory screening, the Court assumes that a *Bivens* action may lie against federal officials for violation of "knock and announce" rules in the same manner that an action may lie against state officials under § 1983. *See Jones v. Kirchner*, 835 F.3d 74, 79-80 (D.C. Cir. 2016) (holding that arrestee stated *Bivens* claim against FBI agents and § 1983 claim

The individual capacity claims labeled by Hammond as "knock and announce" claims are best understood as Fourth Amendment claims. The Fourth Amendment requires that police officers knock and announce their identity and purpose before attempting forcible entry, absent exigent circumstances. *See Kornegay v. Cottingham,* 120 F.3d 392, 396-97 (3d Cir. 1997) (citations omitted). Furthermore, the officers must give the occupants a reasonable time to answer the door before attempting forcible entry. *See United States v. Banks,* 540 U.S. 31, 38-39 (2003). As stated by the United States Supreme Court, "[t]he common-law principle that law enforcement officers must announce their presence and provide residents an opportunity to open the door is an ancient one." *Hudson v. Michigan*, 547 U.S. 586, 589-90 (2006) citing *Wilson v. Arkansas,* 514 U.S. 927, 931-932 (1995). It is well established in the Third Circuit that a failure to knock and announce in serving an ordinary warrant, absent certain exigent circumstances, works a deprivation of the Fourth Amendment rights of the residents, then present, of the dwelling entered. *See United States  v. Wilson,* 123 F. Supp. 2d 278, 284 (E.D. Pa. 2000) (stating the "knock and announce rule" is rooted in the Fourth Amendment's protection against unreasonable search and seizures). Courts have upheld dispensing with the knock-and-announce requirement in four situations: (1) the individual inside was aware of the officers' identity and thus announcement would have been a useless gesture; (2) announcement might lead to the sought individual's escape; (3) announcement might place the officers in physical peril; and (4) announcement might lead to the destruction of evidence. *Kornegay*, 120 F.3d at 397. Hammond's allegations that the unknown Pennsylvania Troopers, unknown Towamencin police, and HSI Agents conducted an unauthorized no-knock entry that was unjustified by the

---

against police detective for violation of arrestee's Fourth Amendment rights during execution of search warrant at arrestee's residence, where arrestee alleged that search was conducted outside of search warrant's permitted time frame, and agents and detective failed to knock and announce before entering).

circumstances is sufficient to pass statutory screening and will be served for a responsive pleading.[7]

### B. Excessive Force Individual Capacity Claims

Hammond appears to assert § 1983 constitutional claims against the unknown Pennsylvania Troopers and unknown Towamencin police based on excessive force and assault arising from the use of force to effectuate his arrest. The Court also understands Hammond's claim of "official oppression" to include an assertion of an excessive force *Bivens* claims against the federal actor Defendants. Excessive force claims arising in the context of an arrest are analyzed as invoking the protections of the Fourth Amendment and a defendant's conduct is analyzed under an objective reasonableness standard. *Graham v. Connor,* 490 U.S. 386, 394 (1989); *Curley v. Klem,* 499 F.3d 199, 206 (3d Cir. 2007). In *Groman v. Twp. of Manalapan*, 47 F.3d 628 (3d Cir. 1995), the Third Circuit explained the elements of an excessive force claim occurring during an arrest:

> An excessive force claim under § 1983 arising out of law enforcement conduct is based on the Fourth Amendment's protection from unreasonable seizures of the person. *Graham* [] 490 U.S. [at 394-95]. A cause of action exists under § 1983 when a law enforcement officer uses force so excessive that it violates the Fourth and Fourteenth Amendments to the United States Constitution. *Brown v. Borough of Chambersburg*, 903 F.2d 274, 277 (3d Cir. 1990). Police officers are privileged to commit a battery pursuant to a lawful arrest, but the privilege is negated by the use of excessive force. *Edwards v. City of Phila.*, 860 F.2d 568, 572 (3d Cir.1988).

---

[7] To the extent the knock and announce claim may be read more broadly to assert liability against ATF Special Agent Dominc Raguz, an unknown "Postal Worker 'UCA'", and three unknown ICE Special Agents, the claims are not plausible since Hammond makes no allegation that any of these Defendants were involved in the execution of the search warrant. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (stating "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable); *Huberty v. U.S. Ambassador to Costa Rica*, 316 F. App'x 120, 122 (3d Cir. 2008) (applying *Rode* to a *Bivens* claim and stating that because the complaint did not allege that either named federal official defendant was personally involved with the alleged wrongs, and *respondeat superior* liability was not an available basis for relief under *Bivens*, plaintiff's claims were properly dismissed).

9

> When a police officer uses force to effectuate an arrest that force must be reasonable. *Graham*, 490 U.S. at 396. The reasonableness of the officer's use of force is measured by "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The reasonableness inquiry is objective, but should give appropriate scope to the circumstances of the police action, which are often "tense, uncertain, and rapidly evolving." *Id.* at 397.

*Groman* at 633-34. As Hammond makes factual allegations that the trooper Defendants, as well as the "HSI Agents" – Thomas Acerno, Christopher Chase, and David Hepler – used an unreasonable amount of force against him, including grabbing him by his neck chain and kicking him, the claim will be served against these Defendants for a responsive pleading.

The excessive force individual capacity claims raised against ATF Special Agent Dominc Raguz, the unknown "Postal Worker 'UCA'" and unknown ICE Agents, and the unknown Towamencin police, however, are unlike the claims against the Troopers, Acerno, Chase, and Hepler. Hammond fails to allege how any of these Defendants were involved in the excessive force events he describes. Accordingly, the individual capacity claims for excessive force asserted against them are dismissed as implausible. *See Rode*, 845 F.2d at 1207; *Huberty*, 316 F. App'x at 122.

    **C.**    ***Bivens* Fourth Amendment False Statements Claim**

Hammond seeks to assert *Bivens* claims for "initiating falsehood," official oppression, illegal search and seizure, and due process violations against Defendant Acerno. The Court understands Hammond's allegations of "initiating falsehood" and "official oppression" to be asserting a violation of his Fourth Amendment rights against Defendant Acerno based on alleged false statements he made in the warrant application and will direct service of that claim. *See Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997) (stating that a section 1983 plaintiff who challenges the validity of a search warrant by asserting that law enforcement agents

submitted a false affidavit to the issuing judicial officer must satisfy the two-part test developed by the Supreme Court in *Franks v. Delaware,* 438 U.S. 154, 155-56, 171-71 (1978), i.e., the plaintiff must allege (1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause).[8]

### D.     *Bivens* Deliberate Indifference Claim

The Court also understands Hammond to allege as part of his *Bivens* claim that Acerno and Chase were deliberately indifferent to his medical needs when refused to allow him to take his medication, causing him to experience a black out.  This individual capacity claim will also be served for a responsive pleading.  *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (holding that to state a constitutional claim based on the failure to provide medical treatment, a person in custody must allege facts indicating that officials were deliberately indifferent to his serious medical needs).

### E.     Official Capacity Claims

#### 1.     Pennsylvania Defendants

The claims Hammond seeks to bring against the unknown Pennsylvania Troopers in their official capacities for money damages are not plausible and must be dismissed.  Official capacity claims asserted against Pennsylvania officials are really suits against the employing government agency, here the Pennsylvania State Police.  *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989).  The Eleventh

---

[8] To the extent the claim may be read more broadly to assert liability against Defendants Chase, Hepler, Raguz, the unknown "Postal Worker 'UCA'", and the unknown ICE Special Agents, the claim is not plausible since Hammond makes no allegation that any Defendant other than Acerno made false statements.

Amendment bars suits against a state and its agencies in federal court that seek monetary damages.  *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003).  Accordingly, the official capacity claims against the unknown Pennsylvania Troopers are dismissed with prejudice.

### 2.     Towamencin Defendants

The official capacity claims against the unknown Towamencin police Defendants are also not plausible, but for different reasons.  Official capacity claims asserted against municipal officials are really claims against the municipality itself.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.*  Unlike states and their officials, municipalities and their officials are not immune from suit in federal court under the Eleventh Amendment and may be liable as "persons" under § 1983, however, this liability extends only to "their *own* illegal acts." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis in original) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)); *see Monell*, 436 U.S. at 665-83.  This limitation is based on the well-established principle that municipalities "are not vicariously liable under § 1983 for their employees' actions." *Connick*, 563 U.S. at 60; *Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.") (emphasis in original).  Because there is no *respondeat superior* for municipal liability under § 1983, to state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation.  *See Monell*, 436 U.S. at 694; *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003).  The plaintiff "must identify

[the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard.  *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009).  Because Hammond has not identified a policy or custom of Towamencin Township that allegedly caused him to suffer a constitutional injury, the official capacity claims against the unknown Towamencin police officers are also dismissed.

### 3. Federal Defendants

Finally, Hammond's official capacity claims against all of the federal actor Defendants for money damages will be dismissed with prejudice.  "An action against government officials in their official capacities constitutes an action against the United States; and *Bivens* claims against the United States are barred by sovereign immunity, absent an explicit waiver."  *Lewal v. Ali*, 289 F. App'x 515, 516 (3d Cir. 2008) (*per curiam*); *see also F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.").  Accordingly, the claims against all federal actor Defendants, including Acerno and Chase, in their official capacities are in essence claims against the United States that must be dismissed with prejudice on sovereign immunity grounds.  *See Brooks v. Bledsoe*, 682 F. App'x 164, 169 (3d Cir. 2017) (*per curiam*) ("To the extent that Brooks is suing the BOP employees in their official capacities, his claim fails as actions against prison officials in their official capacities are considered actions against the United States, and *Bivens* claims against the United States are barred by sovereign immunity, absent an explicit waiver."); *Bell v. Rossott*, 227 F. Supp. 2d 315, 320 (M.D. Pa. 2002) (dismissing claim against individual federal defendants sued in their official capacity because the claims are essentially made against the United States).

### IV. CONCLUSION

For the reasons stated, Hammond's official capacity claims against the unknown Pennsylvania trooper Defendants and the federal actor Defendants are dismissed with prejudice.

His official capacity claims against the Towamencin police Defendants are also dismissed without prejudice.

The following individual capacity claims are dismissed without prejudice: (1) the "knock and announce" claims raised against Defendants Raguz, the unknown "Postal Worker 'UCA", and the unknown ICE Special Agents; (2) the excessive force claims raised against the unknown Towamencin police officers, Raguz, the unknown "Postal Worker 'UCA", and the unknown ICE Special Agents; (3) the Fourth Amendment "initiating falsehood" and "official oppression" claims asserted against all Defendants other than Defendant Acerno; and (3) the deliberate indifference to serious medical needs claims raised against all Defendants other than Acerno and Chase.

The following individual capacity claims will be served for a responsive pleading: (1) claims alleging Defendants Acerno, Chase, Hepler, the unknown Pennsylvania Troopers, and the unknown Towamencin police officers conducted an unauthorized no-knock entry; (2) claims alleging excessive force against Defendants Acerno, Chase, Hepler, and the unknown Pennsylvania Troopers; (3) the claim against Defendant Acerno for allegedly making false statements in the warrant application; (4) the claims for deliberate indifference to Hammond's medical needs against Defendants Acerno and Chase.

Hammond is granted leave to file an amended complaint if he seeks to cure the defects the Court has identified in any claim dismissed without prejudice. In the alternative, Hammond may inform the Court that he seeks to proceed only on the individual capacity claims that have passed statutory screening identified in the preceding paragraph and the Court will direct service on those claims only. An appropriate Order follows with additional instructions on amendment

and exercising the option to proceed only on the identified claims.

**BY THE COURT:**

/s/ Chad F. Kenney

**CHAD F. KENNEY, J.**