IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN E. HAMMOND JR., | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THOMAS ACERNO, et al., | : | NO. 21–3688 |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff John E. Hammond Jr. seeks to hold defendants Thomas Acerno, Christopher Chase, and David Hepler, all of whom are current or former agents of Homeland Security Investigations (HSI), personally liable under the theory of *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), for purported constitutional violations.

In 2021, this Court screened Hammond's pleading under 28 U.S.C. § 1915A, and dismissed most of his claims with prejudice, but permitted four putative *Bivens* claims to proceed against Acerno, Chase, and Hepler.[1] *See* ECF 6, 7. But now, with the benefit of more recent Supreme Court and Third Circuit precedent and adversarial briefing, this Court may consider whether those four putative *Bivens* claims still withstand scrutiny. They do not, and the Court should grant judgment on the pleadings to dismiss all remaining claims against Acerno, Chase, and Hepler, for failure to state a claim.

I.    **RELEVANT FACTS AND PROCEDURAL HISTORY**

A.    **Claims and proceedings in this civil case**

On August 16, 2021, Hammond filed a pro se complaint asserting numerous claims against various law enforcement officers. *See* ECF 1. His Complaint relates to an August 15, 2019 search of his residence (a house belonging to his father-in-law) by local,

---

[1] The Court also permitted Hammond to proceed on claims against some Pennsylvania state and local officers, but it appears that none have ever been served, and the time to serve them has passed. Moreover, no counsel has appeared for any state or local officers, and none has filed an answer or any other response to Hammond's Complaint.

state, and federal law enforcement officers, under an anticipatory federal search warrant obtained by Acerno. The search led to Hammond's detention and arrest on weapons charges based on his ordering and possession of parts used to modify firearms into illegal machineguns, especially after Hammond, who had waived his *Miranda* rights, made inculpatory statements about his illegal possession of firearms.

On November 4, 2021, this Court screened Hammond's pleading under 28 U.S.C. § 1915A and dismissed most of his claims. *See* ECF 6, 7. But it ordered that some individual-capacity claims be served for a responsive pleading, including claims that:

- Acerno, Chase, and Hepler conducted an unauthorized, no-knock entry of Hammond's residence, in violation of the Fourth Amendment;

- Acerno, Chase, and Hepler used excessive force against Hammond, in violation of the Fourth Amendment;

- Acerno made false statements in his application for the search warrant, in violation of the Fourth Amendment; and

- Acerno and Chase were deliberately indifferent to Hammond's medical needs, in violation of the Eighth Amendment.

*See* ECF 6 at 14; ECF 7 at 3.

The Court also permitted Hammond to file an amended complaint or to proceed on the non-dismissed claims of his original complaint. *See id.* And on November 18, 2021, Hammond notified the Court that he intended to proceed on the non-dismissed claims of his original complaint, rather than to file an amended complaint. *See* ECF 8.

On May 10, 2022, Acerno, Chase, and Hepler filed answers to the remaining claims against them. *See* ECF 25, 26, 27. Among other things, each asserted that the Court should not extend the *Bivens* remedy to permit Hammond's claims here. *See id.*

The Court then granted Acerno, Chase, and Hepler's motion to stay this civil action pending resolution of Hammond's related criminal case. ECF 29. However, on September 4, 2024, after Acerno, Chase, and Hepler notified the Court of new *Bivens*-limiting precedent, the Court granted their request to file a pre-discovery motion for judgment on the pleadings to address the viability of the *Bivens* claims. ECF 55.

**B.    Relevant charges and proceedings in Hammond's related criminal case**

After his arrest, a grand jury indicted Hammond on charges of: [1] possession of a firearm by a felon; [2] possession of a machine gun; and [3] possession of a non-registered firearm. 18 U.S.C. §§ 922(g)(1), 922(o); 26 U.S.C. §§ 5845(a)(6), (b), 5861(d), 5871. *United States v. Hammond,* ECF 119, Crim. No. 19–517 (E.D. Pa.) (Nov. 16, 2021).

Hammond filed three motions to suppress, seeking to exclude all evidence seized from his residence and the inculpatory statements he made during the execution of the warrant, arguing that: [1] the anticipatory warrant contained misstatements and lacked probable cause; [2] law enforcement officers failed to "knock and announce" before entering the residence; [3] he was in extreme pain and without his medication when he made inculpatory statements to law enforcement; and [4] his warrantless arrest inside his home was unlawful. *Id.,* ECF 60 (Oct. 19, 2020); *id.,* ECF 79, 80 (May 28, 2021).

The court denied all three of Hammond's motions to suppress, holding that:

- Any misstatements in the affidavit to support the warrant were not necessary to find probable cause, which was supported by other pertinent details, and there was no evidence to support Hammond's assertion that any misstatements were made with a reckless disregard for the truth;

- Although law enforcement did not have a no-knock warrant, Pennsylvania State Police officers repeatedly announced the presence of law enforcement over a loudspeaker before executing the warrant; a physical knock on the door was not required under the circumstances where the officers knew a member of the household was awake, had repeatedly announced their presence just before 10:40 a.m., and were aware that firearms were registered to individuals in the home, which may have presented a danger to officers, making their entry reasonable;

- Hammond was advised of his *Miranda* rights and signed a written waiver of them; there is no evidence he was coerced into waiving his rights or that he was incoherent at the time; even if he was in some pain, he explicitly refused medical treatment when offered and coherently answered questions for most of the interview, and there is no evidence he ever asked the officers to stop the interview; and

- Hammond was arrested after investigators entered his residence pursuant to a search warrant; after entering, the officers developed probable cause to arrest Hammond based on his Mirandized statement that he recently put a folding stock on an AR-15 rifle.

*See id.,* ECF 139 at 8–25 (Jan. 24, 2022).

In July 2022, the court accepted Hammond's open plea of guilty to Counts 1 and 2 of the indictment. *See id.*, ECF 154. Hammond then made three pro se requests to withdraw his guilty plea. *See id.*, ECF 165, 172, 187. The court denied them, holding that Hammond had not met the high standards for withdrawing a plea, and noting that he had "not renewed his earlier claim of actual or legal innocence." *Id.*, ECF 187 at 3 n.1.

In January 2023, the court entered judgment on the charges for which Hammond had pleaded guilty and imposed a sentence that included 84 months of imprisonment and three years of supervised release. *See id.*, ECF 194. Hammond then appealed the judgment against him. *Id.*, ECF 195. *See United States v. Hammond*, No. 23–1110 (3d Cir.).

In December 2023, Hammond's court-appointed attorney requested that she be relieved and that a new attorney be appointed to represent Hammond on appeal. *See id.*, Doc. 25. The court granted the motion and vacated the briefing schedule until new counsel is appointed. *See id.*, Doc. 26. To date, Hammond's appeal remains pending.

## II.    LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(h)(2)(B), a defense of failure to state a claim on which relief can be granted may be made by a motion for judgment on the pleadings under Rule 12(c). *See Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991). And judgment on the pleadings under Rule 12(c) may be granted if there are no material issues of fact and the movant is entitled to judgment as a matter of law. *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005).

Moreover, a motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion. *Revell v. Port Auth. of N.Y, N.J.*, 598 F.3d 128, 134 (3d Cir. 2010). Under the applicable Rule 12(b)(6) standard, the Court must dismiss an action if the complaint fails to plead enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard asks for more than the mere possibility that a defendant has acted unlawfully. *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009). Legal conclusions and bare recitals of a cause of action supported by mere conclusory statements are insufficient to state a claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

While pleadings by imprisoned pro se plaintiffs are liberally construed, *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013), "a pro se complaint must still contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Baker v. Younkin*, 529 F.App'x 114, 115 (3d Cir. 2013) (citing *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570). And pro se complaints may be dismissed, with prejudice, where the complaint, as amended, would fail to state a claim. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

## III.  ARGUMENT

### A.    This Court's prior order does not preclude judgment on the pleadings.

The Prison Litigation Reform Act requires courts to screen prisoner complaints that seek relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). And a court must dismiss any part of a complaint if it [1] asserts legally frivolous or malicious claims; [2] fails to state a claim on which relief may be granted; or [3] seeks monetary relief from a defendant who is immune from such relief. *Id*. § 1915A(b). Here, the Court performed this screening function under § 1915A, and dismissed all but four of Hammond's claims against Acerno, Chase, and Hepler. *See* ECF 6, 7.

At that time, however, no defendants had been served, and a determination that a complaint states colorable claims for purposes of initial screening does not preclude defendants later from challenging those claims. *See Hall v. Parker*, 2019 WL 5728097, *2 (M.D. Tenn. Nov. 5, 2019); *Laszloffy v. Garcia*, 2024 WL 870580, *2 (D. Nev. Feb. 29, 2024). That is, a screening under § 1915A "has no preclusive effect with respect to whether a motion to dismiss may be granted thereafter." *Muhammad v. Ct. of Com. Pls. of Allegheny Cty., Pa.*, 2011 WL 4368394, *4 (W.D. Pa. Aug. 25, 2011), *rep. & recomm. adopted*, 2011 WL 4368724 (W.D. Pa. Sept. 19, 2011), *aff'd in part, vacated in part on other grounds*, 483

F.App'x 759 (3d Cir. 2012). *See also Harris v. Ruthenberg*, 62 F.Supp.3d 793, 800–01 (N.D. Ill. 2014) (collecting cases).

Therefore, the Court's previous ruling does not foreclose its consideration of this motion for judgment on the pleadings. *See Muhammad*, 2011 WL 4368394 at *3–4. And because the Court lacked the benefit of recent precedent that further limits extensions of the *Bivens* remedy, the Court may and should determine whether Hammond can still state a cognizable claim.[2] *See, e.g., Benge v. Ryan*, 154 F.Supp.3d 857, 878 (D. Ariz. 2016) (an intervening change in controlling law is a reason to reconsider a § 1915A decision).

### B.    Hammond fails to state any cognizable *Bivens* claim.

Federal officials may not be sued for constitutional violations under 42 U.S.C. § 1983; a claim against them in their personal capacities may only proceed as an implied cause of action under *Bivens. Brown v. Philip Morris Inc.*, 250 F.3d 789, 800 (3d Cir. 2001). But recognizing a *Bivens* cause of action is now "a disfavored judicial activity," *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017), and the *Bivens* remedy should not be extended "in all but the most unusual circumstances." *Egbert v. Boule*, 596 U.S. 482, 486 (2022).

Here, in its November 2021 ruling under 28 U.S.C. § 1915A, this Court permitted Hammond to proceed on four putative *Bivens* claims. *See* ECF 6 at 7–11. But since then, Supreme Court and Third Circuit precedent has further limited the extension of the *Bivens* remedy to cases that are distinguishable from the only three factual contexts that the Supreme Court had previously recognized in: [1] *Bivens* itself, a claim against federal narcotics agents for handcuffing a man in his own home without a warrant under the Fourth Amendment, 403 U.S. at 396–97; [2] a sex-discrimination claim against a congressman for firing a female assistant under the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228, 248–49 (1979); and [3] a claim against prison officials for failure to

---

[2] The Court may decide this motion without lifting the current stay of discovery and other proceedings entered under the doctrine of *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). *See Andresen v. Pennsylvania*, 2022 WL 3045843, *2 (M.D. Pa. Aug. 2, 2022).

treat a convict's asthma under the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14, 23–25 (1980). *See Hernandez v. Mesa*, 589 U.S. 93, 99 (2020).

Now, "unless a case is indistinguishable from *Bivens, Davis*, or *Carlson*, a damages remedy may be created by Congress, but not by the courts." *Fisher v. Hollingsworth*, __F.4th__, No. 22–2846, 2024 WL 3820969, *5 (3d Cir. Aug. 15, 2024).

Therefore, reflecting concerns that Congress, not the Judiciary, should fashion new causes of action, the Supreme Court requires a two-step inquiry to determine the availability of a *Bivens* remedy in a particular case. *Kalu v. Spaulding*, 113 F.4th 311, 326 (3d Cir. 2024). A court must [1] determine whether the case presents a new context, and [2] if so, whether "special factors" indicate that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed. *Egbert*, 596 U.S. at 492. However, "in most every case," the answer should be: "no *Bivens* action may lie." *Id.* That is, so long as there is "*any* rational reason (even one)" to defer to Congress's judgment, "a court may not recognize a *Bivens* remedy." *Id.*

### 1.    Hammond's claims would extend *Bivens* to new contexts.

At the first step, the court must ask whether the case is different in a meaningful way from *Bivens, Davis*, and *Carlson*. *See Kalu*, 113 F.4th at 326. While the Supreme Court has not outlined an exhaustive list, factors to consider include: the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider. *Id.*

Moreover, the "understanding of a 'new context' is broad," and "a context is new if it is different in a meaningful way from previous *Bivens* cases decided by the Supreme Court." *Henry v. Essex Cty.*, 113 F.4th 355, 361 (3d Cir. 2024). "Whether a context is new

is an easily satisfied test because a modest extension of the *Bivens* action is still an extension," and "even significant parallels to one of the Supreme Court's previous *Bivens* cases may not be enough." *Id.*; *see Xi v. Haugen*, 68 F.4th 824, 834 (3d Cir. 2023).

This Court previously permitted Hammond to proceed on four *Bivens* claims: [1] a "knock-and-announce" claim against Acerno, Chase, and Hepler; [2] an "excessive force" claim against Acerno, Chase, and Hepler; [3] a "false statement" claim against Acerno; and [4] a "deliberate indifference" claim against Acerno and Chase. *See* ECF 6 at 7–11. But each would extend the *Bivens* remedy past the claims permitted by the Supreme Court in *Bivens*, *Davis*, and *Carlson*, and should therefore not be permitted.

### a.    Hammond's "knock-and-announce" claim.

In its 28 U.S.C. § 1915A ruling, this Court relied on circuit and district court cases to assume that a *Bivens* action may lie against Acerno, Chase, and Hepler for violation of knock-and-announce rules. *See* ECF 6 at 6–7 & n.6. But the Third Circuit has since confirmed that courts must only compare a case to the claims specifically permitted by the Supreme Court in *Bivens*, *Davis*, or *Carlson*. *See Fisher*, 2024 WL 3820969 at *4–5; *Kalu*, 113 F.4th at 326 ("Only three cases serve as a benchmark: *Bivens*, *Davis*, and *Carlson*.").

On their face, neither the Fifth Amendment Due Process Clause claim for sex-discrimination in *Davis*, nor the Eighth Amendment Cruel and Unusual Punishment Clause claim for inadequate medical treatment in *Carlson* could apply. Therefore, for Hammond's Fourth Amendment "knock-and-announce" claim to survive, it must be "indistinguishable," *Fisher*, 2024 WL 3820969 at *5, from *Bivens* itself. *See Henry*, 113 F.4th at 361–62. But while *Bivens* may appear like Hammond's claim, "superficial similarities are not enough to support the judicial creation of a cause of action," *Egbert*, 596 U.S. at 495, and courts may not extend the *Bivens* remedy to new contexts, even if they involve the same constitutional rights. *See Fisher*, 2024 WL 3820969 at *5.

In other words, "'almost parallel circumstances' are not enough, and here, distinctions abound." *Xi*, 68 F.4th at 834 (quoting *Egbert*, 596 U.S. at 495).

*First*, Hammond's knock-and-announce claim "seek[s] to hold accountable a new category of defendant." *Id*. The *Bivens* defendants were agents of the Federal Bureau of Narcotics, a former agency of the U.S. Department of the Treasury, whose mission was to enforce the federal drug laws. *See, e.g.*, *United States v. Luster*, 342 F.2d 763, 765 (6th Cir. 1965); *United States v. Jones*, 204 F.2d 745, 752 (7th Cir. 1953). *United States v. Martin*, 223 F.Supp. 104, 105 (E.D. La. 1963) (citing 26 U.S.C. § 7607 (1957)).

Here, by contrast, Hammond attempts to sue three agents of HSI, the "principal investigative arm" of the U.S. Department of Homeland Security (DHS) with "authority to conduct federal criminal investigations into the illegal cross-border movement of people, goods, money, technology and other contraband throughout the United States." *Navarrete v. Wren*, 2023 WL 3397382, *7 (S.D. Cal. May 11, 2023) (declining to extend *Bivens* to any claims against HSI agents), *rep. & recomm. adopted*, 2023 WL 8176084 (S.D. Cal. June 1, 2023). Thus, Hammond's claims relate to "a different type of officer with a different law-enforcement mandate than the federal narcotics officers enforcing federal drug laws in *Bivens*." *DeBenedetto v. Salas*, 2023 WL 6388127, *6 (N.D. Ill. Sept. 29, 2023). Moreover, Hammond "does not point to any reason to believe that most federal agencies have the same or similar legal mandates, or more to the point, that DHS has the same mandate as agencies enforcing federal anti-narcotics law," and "such differences alone make this a new *Bivens* context." *Sheikh v. DHS*, 106 F.4th 918, 925 (9th Cir. 2024) (declining to extend *Bivens* to any claims against HSI agents).

Moreover, Hammond asserts that the law enforcement officers who entered his residence pursuant to a warrant were a collection of "PSPSERT and HSI-AGENTS."[3] *See* Compl. (ECF 1) at 10; *see also* ECF 6 at 7 (construing Hammond's claims as against "unknown Pennsylvania Troopers, unknown Towamencin police, and 'HSI Agents.'").

---

[3] This collective pleading is insufficient under Rule 8 to state a *Bivens* claim. *See Iqbal*, 556 U.S. at 676 (plaintiff must plead that each defendant, through his own individual actions, has violated the Constitution); *Lawal v. McDonald*, 546 F.App'x 107, 113 (3d Cir. 2014) (collective references to "defendants" made *Bivens* claim improperly ambiguous).

This alleged involvement of a federal, state, and local task force also makes his case distinct from *Bivens*. *See Campbell v. City of Yonkers*, 2023 WL 4867459, *8 (S.D.N.Y. July 31, 2023) (finding meaningful difference from *Bivens* where plaintiff challenged task force of federal and local law enforcement officers); *Senatus v. Lopez*, 2022 WL 16964153, *5 (S.D. Fla. Oct. 12, 2022) (declining to extend *Bivens* to claims involving a federal-state task force), *rep. & recomm. adopted*, 2022 WL 16961323 (S.D. Fla. Nov. 16, 2022).

*Second*, Hammond's knock-and-announce claim "concern[s] a different breed of law enforcement misconduct." *Henry*, 113 F.4th at 362. *Bivens* involved a claim for an illegal arrest and warrantless search. *See* 403 U.S. at 389. Here, while Hammond disputes whether the agent should have knocked-and-announced before entering a residence, he concedes that the search was conducted pursuant to a search warrant, *see* Compl. (ECF 1) at 11, and "the presence of a warrant is a crucial difference in the *Bivens* new-context analysis because the legal mandate under which defendants were operating diverges from the warrantless narcotics-investigation circumstances in *Bivens*." *Challenger v. Bassolino*, 2023 WL 4287204, *7 (D.N.J. June 30, 2023) (citing cases). *See also Cienciva v. Brozowski*, 2022 WL 2791752, *9 (M.D. Pa. July 15, 2022) (same).

Hammond's argument that the HSI agents only had a search warrant, not an arrest warrant, does not lead to a different result. As the Fourth Circuit explained:

> What *Bivens* involved was the Fourth Amendment right to be free of unreasonable warrantless searches and seizures; this case, by contrast, involves searches and a seizure conducted *with* a warrant. It thus implicates a distinct Fourth Amendment guarantee—that "no Warrants shall issue, but upon probable cause"—governed by different legal standards. Indeed, the Fourth Amendment sharply distinguishes between with-warrant and warrantless searches, treating the introduction of a warrant as a signal moment in the proceedings. For purposes of determining whether this is a "new" *Bivens* context, we think the "right at issue" here is meaningfully different from the one at issue in *Bivens* itself.

*Annappareddy v. Pascale*, 996 F.3d 120, 135–36 (4th Cir. 2021) (internal citations omitted). Moreover, "when officers obtain a warrant to search an individual's home, they also receive certain limited rights to occupy and control the property. This limited degree of

control supports Defendants' argument that federal agents were acting under a different legal mandate than the agents in *Bivens*." *MT ex rel. Zubkova v. United States*, 2023 WL 2468948, \*11 (S.D. Cal. Mar. 10, 2023) (cleaned up). *See also Cronin v. W. Whiteland Twp.*, 994 F.Supp. 595, 601–02 (E.D. Pa. 1998) (an arrest warrant is not necessary to effect an arrest in a home for which officers had a search warrant).[4]

Likewise, Hammond's claim that Acerno presented false information in his application for the search warrant does not lead to a different result. Even where, as here, the search warrant allegedly had incorrect information, courts have found the errors are irrelevant to the *Bivens* analysis. *See Bissereth v. United States*, 2023 WL 4373888, \*8–9 (D. Mass. July 6, 2023); *Chavez v. United States*, 2023 WL 2071555, \*17 (D. Or. Feb. 17, 2023); *Young v. City of Council Bluffs*, 569 F.Supp.3d 885, 893–94 (S.D. Iowa 2021). Likewise, courts have held that in the context of allegations of intentional or reckless misstatements in a warrant application, "a search with a warrant—regardless of whether it was properly acquired with probable cause—is meaningfully different from the warrantless search in *Bivens*." *Quinones-Pimentel v. Cannon*, 2022 WL 826344, \*21 (D.P.R. Mar. 17, 2022), *aff'd*, 85 F.4th 63 (1st Cir. 2023).

*Third*, Hammond's knock-and-announce claim describes a "mechanism of injury" that meaningfully differentiates his case from *Bivens*. *Sheikh*, 106 F.4th at 925 (citing *Egbert*, 596 U.S. at 495). The *Bivens* plaintiff alleged "great humiliation, embarrassment, and mental suffering" as a direct result of the federal agents' own misconduct in entering his home without a warrant, arresting him for alleged narcotics violations without a warrant, manacling him, threatening to arrest his entire family, searching his apartment "from stem to stern," transporting him to the federal courthouse in Brooklyn, where he was interrogated, booked, and subjected to a visual

---

[4] For this reason, the court in Hammond's criminal case rejected Hammond's motion to suppress—based on all the same arguments he presents here—holding that the lack of an arrest warrant did not invalidate his arrest in his home. *United States v. Hammond*, Crim. No. 19–517, ECF 139 at 24–25 & n.5 (Jan. 24, 2022).

strip search. 403 U.S. at 389–90. In contrast, Hammond's alleged injury arises from Acerno's, Chase's, and Hepler's alleged *indirect* acts of being part of a broad law-enforcement team—including federal, state, and local officers—that entered the home of Hammond's father-in-law, with a warrant, but without first knocking-and-announcing, which Hammond asserts led to his arrest and prosecution. *See* Compl. (ECF 1) at 10.

*Finally*, Hammond's knock-and-announce challenge is substantively a legal one, *see* Compl. (ECF 1) at 10–12, making a *Bivens* action against the HSI agents an improper collateral attack on the holdings of the court in his criminal case that denied his motions to suppress evidence obtained after the no-knock entry, and rejected all the same arguments Hammond asserts here.[5] *See, e.g., Simon v. Muschell*, 2017 WL 4021551, *8 (N.D. Ind. Sept. 13, 2017) (*Bivens* plaintiff is estopped from raising violations also raised in a denied suppression motion); *Roberson v. Dep't of Soc. Servs.*, 2023 WL 10406019, *11 (E.D. La. Dec. 12, 2023) (*Bivens* action may not collaterally attack rulings issued by another judge), *rep. & recomm. adopted*, 2024 WL 1116221 (E.D. La. Mar. 14, 2024). *See also Williams v. Hill,* 74 F.3d 1339, 1341 (D.C. Cir. 1996) (because *Bivens* plaintiff was found guilty and the judgment had not been set aside, he could not recover damages for the actions of those who allegedly brought about his convictions); *Vennes v. An Unknown No. of Unidentified Agents of U.S.*, 26 F.3d 1448, 1452 (8th Cir. 1994) (declining to permit a *Bivens* remedy for coercion by law enforcement where plaintiff had pleaded guilty or no contest to some of the allegedly coerced criminal offenses).

---

[5] As the court in Hammond's criminal case held, even if the agents lacked a no-knock warrant, Pennsylvania State Police officers repeatedly announced the presence of law enforcement over a loudspeaker before executing the warrant; a physical knock on the door was not required under the circumstances where the officers knew a member of the household was awake, had repeatedly announced their presence just before 10:40 a.m., and were aware that firearms were registered to individuals in the home, which may have presented a danger to officers, making their entry reasonable. *United States v. Hammond,* Crim. No. 19–517, ECF 139 at 15–18 (Jan. 24, 2022).

**b.    Hammond's "excessive force" claim.**

In its 28 U.S.C. § 1915A ruling, this Court relied on *Graham v. Connor*, 490 U.S. 386 (1989) (a 42 U.S.C. § 1983 case), and circuit precedent, to assume that a *Bivens* action may lie against Acerno, Chase, and Hepler for alleged "excessive force" in the context of an arrest. *See* ECF 6 at 9–10. However, the Third Circuit has since confirmed that courts must only compare a claim to the claims specifically permitted by the Supreme Court in *Bivens*, *Davis*, or *Carlson*. *See Fisher*, 2024 WL 3820969 at *5.

On their face, neither the Fifth Amendment Due Process Clause claim for sex-discrimination in *Davis*, nor the Eighth Amendment Cruel and Unusual Punishment Clause claim for inadequate medical treatment in *Carlson* could apply. Therefore, for Hammond's Fourth Amendment "excessive force" claim to survive, it must be "indistinguishable," *Fisher*, 2024 WL 3820969 at *5, from *Bivens* itself. *See Henry*, 113 F.4th at 361–62. Again, "superficial similarities are not enough," *Egbert*, 596 U.S. at 495, and courts may not extend the *Bivens* remedy to new contexts, even if they involve the same constitutional rights. *See Fisher*, 2024 WL 3820969 at *5.

Again, "'almost parallel circumstances' are not enough, and here, distinctions abound." *Xi*, 68 F.4th at 834 (quoting *Egbert*, 596 U.S. at 495).

*First*, for the same reasons as Hammond's knock-and-announce claim, his excessive force claim against Acerno, Chase, and Hepler "seek[s] to hold accountable a new category of defendant," *Xi*, 68 F.4th at 834, HSI agents. *See* Section III.B.1.a, *supra*.

*Second*, for the same reasons as Hammond's knock-and-announce claim, his excessive force claim "concern[s] a different breed of law enforcement misconduct." *Henry*, 113 F.4th at 362. *See* Section III.B.1.a, *supra*.

*Third*, "while *Bivens* and this case do involve similar allegations of excessive force and thus arguably present 'almost parallel circumstances' or a similar 'mechanism of injury,' these superficial similarities are not enough to support the judicial creation of a cause of action." *Egbert*, 596 U.S. at 495 (cleaned up). Moreover, Hammond's allegations

of excessive force differ significantly from those in *Bivens*. As noted above, the *Bivens* plaintiff alleged "great humiliation, embarrassment, and mental suffering" as a direct result of the federal agents' own misconduct in entering his home without a warrant, arresting him for alleged narcotics violations without a warrant, manacling him, threatening to arrest his entire family, searching his apartment "from stem to stern," transporting him to the federal courthouse in Brooklyn, where he was interrogated, booked, and subjected to a visual strip search. 403 U.S. at 389–90.

In contrast, Hammond's alleged injury arises from a group of masked men who pulled him out of bed and pointed firearms in his face. *See* Compl. (ECF 1) at 10. No comparable conduct was alleged in *Bivens*. *See Young*, 569 F.Supp.3d at 894 (declining to extend *Bivens* to claim that federal agent pointed an automatic weapon at plaintiff and threatened to shoot him). Moreover, like his knock-and-announce claim, Hammond merely asserts broadly that the officers who allegedly used excessive force were "PSPSERT and HSI-AGENTS," and the alleged involvement of a task force of federal, state, and local law enforcement officers makes his claim significantly different than *Bivens*. *See* Section III.B.1.a, *supra*.

### c.    Hammond's "false statement" claim.

In its 28 U.S.C. § 1915A ruling, this Court relied on circuit precedent to assume that a *Bivens* action may lie against Acerno (not Chase or Hepler) for alleged "false statements" in the context of obtaining the search warrant that led to Hammond's arrest and prosecution. *See* ECF 6 at 10. But the Third Circuit has since confirmed that courts must only compare a claim to the claims specifically permitted by the Supreme Court in *Bivens*, *Davis*, or *Carlson*. *See Fisher*, 2024 WL 3820969 at *5.

On its face, the Eighth Amendment Cruel and Unusual Punishment Clause claim for inadequate medical treatment in *Carlson* does not apply to a "false statement" claim. Moreover, while Hammond's Complaint generally invokes the Fifth Amendment (along with several others), Compl. (ECF 1) at 7, he does not allege that the "false statements"

14

(which he calls "initiating falsehood" and "official oppression") amount to a due process violation under that amendment. *See id.* at 15–16. And "even at a high level," Hammond's claim of "official oppression" is "materially different" from the claim of sex discrimination by a congressional staffer in *Davis*. *See Xi*, 68 F.4th at 835 (holding *Davis* did not permit a claim that an FBI agent violated the plaintiff's Fifth Amendment Equal Protection rights by discriminatorily investigating him because he was Chinese).

Instead, Hammond appears to invoke the Fourth Amendment's prohibition on unreasonable searches and seizures, in asserting that Acerno provided false information in his application for the search warrant. *See* Compl. (ECF 1) at 15–16. And this Court likewise construed Hammond's "false statement" claim as arising under the Fourth Amendment. *See* ECF 6 at 10–11.

Therefore, for Hammond's Fourth Amendment "false statement" claim to survive, it must be "indistinguishable," *Fisher*, 2024 WL 3820969 at *5, from *Bivens* itself. *See Henry*, 113 F.4th at 361–62. Again, "superficial similarities are not enough," *Egbert*, 596 U.S. at 495, and courts may not extend the *Bivens* remedy to new contexts, even if they involve the same constitutional rights. *See Fisher*, 2024 WL 3820969 at *5.

Again, "'almost parallel circumstances' are not enough, and here, distinctions abound." *Xi,* 68 F.4th at 834 (quoting *Egbert*, 596 U.S. at 495).

*First*, for the same reasons as Hammond's knock-and-announce claim, his false statement claim against Acerno "seek[s] to hold accountable a new category of defendant," *Xi*, 68 F.4th at 834, HSI agents. *See* Section III.B.1.a, *supra*.

*Second*, for the same reasons as Hammond's knock-and-announce claim, his false statement claim "concern[s] a different breed of law enforcement misconduct." *Henry*, 113 F.4th at 362. *See* Section III.B.1.a, *supra*.

*Third*, Hammond's allegations that Acerno provided false information in his application for a search warrant differ significantly from the allegations in *Bivens*. As noted above, the *Bivens* plaintiff alleged "great humiliation, embarrassment, and mental

15

suffering" as a direct result of the federal agents' own misconduct in entering his home without a warrant, arresting him for alleged narcotics violations without a warrant, manacling him, threatening to arrest his entire family, searching his apartment "from stem to stern," transporting him to the federal courthouse in Brooklyn, where he was interrogated, booked, and subjected to a visual strip search. 403 U.S. at 389–90.

In contrast, Hammond's alleged injury arises from Acerno's alleged acts of making false statements in a warrant application—allegations completely absent from *Bivens*. And in the wake of the Supreme Court's new limits on *Bivens* claims, courts have taken a fresh look at the precedents that had authorized *Bivens* claims in this context of alleged false and misleading warrant applications, choosing instead to limit *Bivens* to cases of warrantless searches and seizures. *See Quinones-Pimentel v. Cannon*, 85 F.4th 63, 68 (1st Cir. 2023) (affirming dismissal of *Bivens* claim that federal officials conspired with private actors to use false evidence and statements in support of the affidavit to acquire search warrants); *Annappareddy*, 996 F.3d at 135–38 (affirming dismissal of *Bivens* claim against agents for falsifying affidavit to obtain search warrant); *Cantú v. Moody*, 933 F.3d 414, 423–24 (5th Cir. 2019) (affirming denial of *Bivens* relief where plaintiff alleged that agents falsified affidavits that led to his unlawful seizure); *Farah v. Weyker*, 926 F.3d 492, 498–502 (8th Cir. 2019) (reversing denial of motion to dismiss *Bivens* claim alleging that agent provided false information and deceived prosecutors).

*Finally,* for the same reasons as Hammond's knock-and-announce claim, his "false statement" claim is substantively a legal challenge, making a *Bivens* action against an HSI agent an improper collateral attack on the holdings of the court in his criminal case that denied his motions to suppress evidence obtained under the warrant, and rejected all the same arguments Hammond asserts here.[6] *See* Section III.B.1.a, *supra*.

---

[6] As the criminal court held, any misstatements in the affidavit to support the warrant were not necessary to find probable cause, which was supported by other pertinent details, and there was no evidence to support Hammond's assertion that any (continued)

### d.    Hammond's "deliberate indifference" claim.

In its 28 U.S.C. § 1915A ruling, this Court relied on *Farmer v. Brennan*, 511 U.S. 825 (1994), to assume that a *Bivens* action may lie against Acerno and Chase (not Hepler) for "deliberate indifference" to Hammond's medical needs when they allegedly refused to allow him to take his medication, causing him to black out. *See* ECF 6 at 11. But the Third Circuit has since confirmed that courts must only compare a case to the claims specifically permitted by the Supreme Court in *Bivens*, *Davis*, or *Carlson*. *See Kalu*, 113 F.4th at 326. And specifically, courts may not rely on *Farmer* to imply a *Bivens* remedy. *Fisher*, 2024 WL 3820969 at *4–5 (recognizing the abrogation of *Bistrian v. Levi*, 912 F.3d 79, 91 (3d Cir. 2018), and *Shorter v. United States*, 12 F.4th 366, 369 (3d Cir. 2021)); *Kalu*, 113 F.4th at 329–30 ("*Farmer* does not present an established *Bivens* context.").

On its face, the Fourth Amendment seizure claim in *Bivens* itself does not apply to a "deliberate indifference" to medical needs claim. *See Kalu*, 113 F.4th at 337.

Moreover, while Hammond's Complaint generally invokes the Fifth Amendment (and several others), Compl. (ECF 1) at 7, he does not allege that Acerno and Chase's refusal to permit him to take his medication violated that amendment. *See id.* at 15–16. And "even at a high level," Hammond's claim of deliberate indifference to medical needs is "materially different" from the claim of sex discrimination by a congressional staffer in *Davis*. *See Xi*, 68 F.4th at 835; *Kalu*, 113 F.4th at 337; *Gedeon v. Att'y Gen.*, 2024 WL 4216628, *3 (E.D. Pa. Sept. 17, 2024); *Challenger*, 2023 WL 4287204 at *10 n.7.

Instead, in asserting that Acerno and Chase were deliberately indifferent to his medical needs, Hammond appears to invoke the Eighth Amendment's prohibition on cruel and unusual punishment. *See* Compl. (ECF 1) at 7, 10–11. And by relying on *Farmer v. Brennan*, this Court likewise construed Hammond's "deliberate indifference" claim as arising under the Eighth Amendment. *See* ECF 6 at 11; *Farmer*, 511 U.S. at 828

---

misstatements were made with a reckless disregard for the truth. *United States v. Hammond*, Crim. No. 19–517, ECF 139 at 8–15 (Jan. 24, 2022).

("A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment.").

Therefore, for Hammond's Eighth Amendment "deliberate indifference" claim to survive, it must be "indistinguishable," *Fisher*, 2024 WL 3820969 at *5, from *Carlson*, the only Supreme Court case to permit a *Bivens* claim by a federal prisoner for deliberate indifference to medical needs under the Eighth Amendment. 446 U.S. at 23–25. *See Kalu*, 113 F.4th at 337. But while *Carlson* may appear like Hammond's claim, "superficial similarities are not enough to support the judicial creation of a cause of action," *Egbert*, 596 U.S. at 495, and courts may not extend the *Bivens* remedy to new contexts, even if they involve the same constitutional rights. *See Fisher*, 2024 WL 3820969 at *5.

Again, "'almost parallel circumstances' are not enough, and here, distinctions abound." *Xi*, 68 F.4th at 834.

*First*, for the same reasons as Hammond's knock-and-announce claim, his deliberate indifference claim against Acerno and Chase "seek[s] to hold accountable a new category of defendant," *Xi*, 68 F.4th at 834, HSI agents. *See* Section III.B.1.a, *supra*.

*Second*, Hammond's allegations differ significantly from those in *Carlson, see Kalu*, 113 F.4th at 344–45, and his deliberate indifference claim therefore "concern[s] a different breed of law enforcement misconduct." *Henry*, 113 F.4th at 362.

Specifically, in *Carlson*, a deceased prisoner's mother sued on behalf of her son's estate, alleging that despite knowing about the prisoner's serious chronic asthma, prison officials kept him in a facility with grossly inadequate medical facilities, failed to treat him for eight hours after an asthma attack, provided inadequate medical care, and delayed his transfer to a hospital. 446 U.S. at 16 n.1. Here, by contrast, Hammond alleges that while interrogating him in his own home, HSI agents Acerno and Chase refused to permit him to take his medications for pain and anxiety, and that the stress of the interrogation caused him to black out, after which he "was actually taken to the

hospital by the agents."[7] Compl. (ECF 1) at 10–11. Thus, Hammond asserts a very different factual claim, for a short-term denial of access to medication by HSI agents, compared to *Carlson*'s claims of long-term and repeated medical deprivations by prison officials. *See, e.g.*, *Spivey v. Breckon*, 2024 WL 1184445, *7 (W.D. Va. Mar. 18, 2024) (collecting cases); *McIntyre v. USMS*, 2023 WL 2447424, *5 (D.N.J. Mar. 10, 2023) (declining to extend *Carlson* to claims of deliberate indifference against federal agents).

More importantly, because at the relevant time, Hammond had not yet been convicted of a crime, a different constitutional provision applies to his claim than applied in *Carlson*. That is because "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977). Therefore, because at the relevant time, Hammond was not a convict but a pretrial detainee, he must instead rely on the Fifth Amendment Due Process Clause for protection. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16, 538 (1979). *Montgomery v. Ray*, 145 F.App'x 738, 740 (3d Cir. 2005); *United States v. Sterling*, 459 F.Supp.3d 673, 680 (E.D. Pa. 2020).

In other words, because Hammond was not a convicted prisoner, he may not invoke the Eighth Amendment to support a "deliberate indifference" claim; instead, he must rely on the Fifth Amendment, and therefore he cannot rely on *Carlson*. *See Abbasi*, 582 U.S. at 148 ("The constitutional right is different here, since *Carlson* was predicated on the Eighth Amendment and this claim is predicated on the Fifth."); *Fisher*, 2024 WL 3820969 at *5. *See also, e.g.*, *McBride v. Laurie*, 2024 WL 4254097, *6 (E.D. Pa. Sept. 20, 2024) (citing cases); *Bennett v. Washington*, 2024 WL 2884573, *3 (W.D. Ky. June 7, 2024). *McIntyre*, 2023 WL 2447424 at *8; *Randle v. Gonzalez*, 2024 WL 1655382, *2 (N.D. Ind. Apr. 17, 2024); *Stennis v. Armstrong*, 2023 WL 1319561, *6–7 (N.D. Ill. Jan. 31, 2023); *Bravo v.*

---

[7] Indeed, Hammond's allegation that Acerno and Chase took him to the hospital, and therefore "took measures to address the situation," *Kalu*, 114 F.4th at 343, would defeat any possible claim of deliberate indifference by them. *See id.*

*USMS*, 684 F.Supp.3d 112, 125 (S.D.N.Y. 2023); *Choice v. Michalak*, 2022 WL 4079577, *4 (N.D. Ill. Sept. 6, 2022); *Kaid v. Tatum*, 2024 WL 946949, *10 (S.D.N.Y. Jan. 24, 2024).

This may mean that a federal pretrial detainee cannot bring a deliberate indifference claim under *Bivens*, even if a convicted prisoner could in the same circumstances. *See Abbasi*, 582 U.S. at 169–71 (Breyer, J., dissenting). But considering current Supreme Court and Third Circuit precedent, this Court should not extend *Carlson* to permit Hammond to bring a Fifth Amendment claim, because a federal damages remedy for such conduct, if there is to be one, must be created by Congress, not the courts. *McIntyre*, 2023 WL 2447424 at *8. *See Fisher*, 2024 WL 3820969 at *5.

### 2.    "Special factors" weigh against permitting Hammond's claims.

The second step of the Supreme Court's *Bivens* framework requires a court to ask if there are "'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 596 U.S. at 492; *Henry*, 113 F.4th at 361. The Supreme Court has cautioned that this "inquiry does not invite federal courts to independently assess the costs and benefits of implying a cause of action." *Id.* at 496. Rather, "a court faces only one question: whether there is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Id.* at 492. Two factors are particularly weighty: the existence of an alternative remedial structure and separation-of-powers principles. *Mack v. Yost*, 968 F.3d 311, 320 (3d Cir. 2020). But *any* reason to pause is sufficient to forestall an extension. *Henry*, 113 F.4th at 363.

Here, several special factors counsel hesitation in extending the *Bivens* remedy to Hammond's claims against Acerno, Chase, and Hepler.

*First*, by itself, the "uncertainty" that results from extending Bivens to a new context "forecloses relief." And "the newness of [a] 'new context' ... alone require[s]

dismissal." *Fisher*, 2024 WL 3820969, *5 (quoting *Egbert*, 596 U.S. at 493). Here, as explained above, Hammond's case would extend *Bivens* claims to new contexts.

*Second*, Hammond's claims implicate unanswered questions that risk intrusion into the Executive Branch's investigative and prosecutorial functions. *Henry*, 113 F.4th at 363. That is the success of Hammond's claims, as alleged, turns on whether he was arrested and prosecuted because of Acerno's, Chase's, and Hepler's alleged misconduct. And to determine whether the HSI agents' alleged misconduct caused Hammond's alleged injuries requires review of a causal sequence of events, including the investigative steps and decisions leading to the no-knock entry, Hammond's arrest and detention, and the collection of evidence that led to his guilty plea and conviction.

But the investigation and prosecution of crime is a core responsibility of the executive branch, and the judiciary affords wide latitude to the executive regarding the performance of that function—especially with respect to decisions concerning the resources that should be devoted to an ongoing criminal investigation or the investigative techniques that should be used. *See Reporters Comm. for Freedom of the Press v. AT&T*, 593 F.2d 1030, 1065 (D.C. Cir. 1978). This Court should not create a *Bivens* remedy to permit Hammond to challenge otherwise lawful investigatory steps of HSI agents in an ongoing criminal investigation based on the assertion that the steps are ill-motivated; recognizing such a claim would threaten broad judicial interference with core functions of the executive branch in the critical stages of investigations. *Sheikh*, 106 F.4th at 927. *See also Egbert*, 596 U.S. at 494; *Xi*, 68 F.4th at 836; *Henry*, 113 F.4th at 363.

*Third*, "separation of powers principles" caution against extending *Bivens* to the new context presented by Hammond's claims. *Kalu*, 113 F.4th at 336; *Henry*, 113 F.4th at 363; *Xi*, 68 F.4th at 836. Because Hammond's claims are against HSI agents, who are responsible for investigating transnational crime, his claims give reason to pause based on the type of investigations HSI carries out and their foreign policy implications. *Sheikh*, 106 F.4th at 927; *Sigalovskaya v. Braden*, 2023 WL 6385761, *6 (E.D.N.Y. Sept. 29,

2023). And even if HSI agents appear to have been investigating traditional criminal law domestically, a court cannot apply the special factors analysis "at such a narrow level of generality." *Id*. That is, "in considering 'more broadly if there is any reason to think that judicial intrusion into' investigation of transnational crime and violation of customs and immigration laws 'might be harmful or inappropriate,' the Court has reason to pause." *Id*.; *see Sheikh*, 106 F.4th at 927–28. *See also Xi*, 68 F.4th at 836; *Henry*, 113 F.4th at 363.

*Fourth*, the existence of alternative remedial structures weighs against extending *Bivens* to claims against HSI agents. *See Egbert*, 596 U.S. at 483 ("a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'") (quoting *Abbasi*, 582 U.S. at 137).

Here, Congress has empowered the Secretary of Homeland Security to control, direct, and supervise all DHS employees, and to establish regulations to carry out this obligation. *See* 8 U.S.C. §§ 1103(a)(2)–(3). And by regulation, DHS must investigate "alleged violations of the standards for enforcement activities" by officers of the U.S. Immigration and Customs Enforcement—of which HSI is a component—and accept grievances from "any persons wishing to lodge a complaint." 8 C.F.R. §§ 287.10(a)–(b). This alternative remedy, while not all-encompassing, is enough to preclude a *Bivens* remedy against all HSI agents. *Sheikh*, 106 F.4th at 928; *Navarrette*, 2023 WL 3397382 at *7–8. *See also Egbert*, 596 U.S. at 497 (citing 8 C.F.R. §§ 287.10(a)–(b) as an available, alternative remedy to *Bivens* claims against officers of another DHS component); *Kalu*, 113 F.4th at 336 (courts may not "second-guess" whether to supplement an existing remedial scheme with a damages action, which is a legislative determination).

Another alternative to the *Bivens* remedy is the Hyde Amendment, which allows courts to award attorney fees to criminal defendants who prevail against "vexatious, frivolous, or bad faith" positions taken by the government. Act of Nov. 26, 1997, Pub. L. No. 105–119, § 617, 111 Stat. 2440, 2519 (codified at 18 U.S.C. § 3006A note). *See Xi*, 68 F.4th at 837; *Sheikh*, 106 F.4th at 928; *Farah*, 926 F.3d at 501.

Moreover, where, as here, the plaintiff is a criminal defendant, the exercise of "his right to jury trial" is an available alternative remedy to a *Bivens* claim. *See Wilkie v. Robbins*, 551 U.S. 537, 551–52 (2007). *See also Stepanian v. Addis*, 782 F.2d 902, 904 (11th Cir. 1986) (declining to recognize a *Bivens* claim where a criminal trial provided the plaintiff with a full opportunity to clear his name); *Vennes*, 26 F.3d at 1452 (by pleading guilty, *Bivens* plaintiff elected to forego the process best suited to determining whether the agents in fact violated his constitutional rights—the criminal trial).

Finally, those who are wrongly convicted and sentenced may seek habeas release under 28 U.S.C. § 2255, or sue the government for damages under 28 U.S.C. § 1495. *See Xi*, 68 F.4th at 837; *Farah*, 926 F.3d at 501; *see also Abbasi*, 582 U.S. at 145 (noting a habeas petition may be an alternative form of judicial relief precluding a *Bivens* claim).

### 3.    Hammond cannot bring *Bivens* claims for supervisory liability.

In its 28 U.S.C. § 1915A ruling, the Court permitted Hammond to proceed on two *Bivens* claims against Hepler, as "Supervisory Special Agent," *see* ECF 6 at 5, apparently because Hammond named him in the caption of his complaint. *See* ECF 1 at 1, 8. But while the body of the Complaint makes various allegations against Acerno and Chase, it never mentions Hepler and attributes no conduct to him.[8] But to the extent Hammond asserts supervisory liability claims against Hepler, any *respondeat superior* allegations would be improper because the Supreme Court has eliminated "supervisory liability" as a basis for a *Bivens* claim. *Iqbal*, 556 U.S. at 676–77; *see also Abbasi*, 582 U.S. at 140.

### C.    Acerno, Chase, and Hepler would also have qualified immunity.

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of

---

[8] Nor could it, as Hepler was on assignment in the United Kingdom during the relevant events. Instead, it appears that Hammond first learned of Hepler's name and position from documents that he received in criminal discovery.

which a reasonable person would have known."[9] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, even if the Court were to find that Hammond has stated a cognizable *Bivens* claim, it should still dismiss this matter because Hammond has not pleaded, and cannot show, the violation of a right that was "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

### 1. Hammond does not sufficiently allege a constitutional violation.

To decide if an official is entitled to qualified immunity, a court must "determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 242 n.7 (3d Cir. 2008). Here, as explained above, Hammond has not, and his generalized allegations are insufficient. *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001).

### 2. There is no "clearly established" constitutional violation.

Even were the Court to find that Hammond has alleged a specific cognizable constitutional violation against Acerno, Chase, or Hepler, Hammond still cannot demonstrate that their alleged acts or omissions were unconstitutional, "beyond debate." *See al-Kidd*, 563 U.S. at 741. That is, conduct violates "clearly established" law only if, at the time, the contours of a right were sufficiently clear that every reasonable official would have understood that he was violating that right, and existing precedent must have placed the question beyond debate. *Id.* And courts may not define clearly established law at a high level of generality. *White v. Pauly*, 580 U.S. 73, 79 (2017).

That is, even if the Court were to find Hammond had a constitutional right, the alleged conduct would violate clearly established law only if there was sufficient, factually similar precedent at the time, to put defendants on notice that their conduct

---

[9] Although an affirmative defense, qualified immunity may be asserted by motion. *See D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1368 n.7 (3d Cir. 1992). It is "an immunity from suit rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), and should be determined at the earliest possible stage. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *Curley v. Klem*, 298 F.3d 271, 277 (3d Cir. 2002).

was prohibited. *In re J&S Props.*, 872 F.3d 138, 143 (3d Cir. 2017). It is not enough that similar claims have been permitted before; courts must look to the factual context and category of defendants in the case at issue. *Abbasi*, 582 U.S. at 135. Here, as explained above, there was not. Moreover, "the qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter*, 502 U.S. at 229.

    **D.    Hammond's Complaint should be dismissed with prejudice.**

Hammond's claims should be dismissed with prejudice because as explained above, an amended complaint would be futile as it could not survive a motion to dismiss. *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). *See, e.g.*, *Jordan v. Barves*, 2024 WL 1585939, *6 (M.D. Pa. Apr. 11, 2024) (holding plaintiff could not amend to state a claim that would not extend *Bivens* to a new context). Moreover, Hammond has already been granted leave to amend once, *see* ECF 7 ¶ 4, and still failed to state a cognizable claim. *See Floyd v. Att'y Gen. of Pa.*, 722 F.App'x 112, 115 n.2 (3d Cir. 2018).

**IV.    CONCLUSION**

For these reasons, the Court should grant judgment on the pleadings and dismiss Hammond's remaining claims against Acerno, Chase, and Hepler, with prejudice.

                    Respectfully submitted,

                    JACQUELINE C. ROMERO
                    United States Attorney

                    /s/ Susan R. Becker for GBD
                    GREGORY B. DAVID
                    Assistant United States Attorney
                    Chief, Civil Division

                    /s/ Mark J. Sherer
                    MARK J. SHERER
                    Assistant United States Attorney
                    615 Chestnut St., Suite 1250
                    Philadelphia, PA 19106
                    (215) 861-8445
Dated: September 27, 2024        mark.sherer@usdoj.gov